IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KEVIN OMAR FRAZER,

        Plaintiff,

vs.                                                No. CIV 09-925 MCA/LFG

WARDEN TERRY, et al.,

        Defendants.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Doc. 18], which was filed on June 4, 2010 along with the Martinez Report [Doc. 17]. Plaintiff did not request an extension of time to respond, and he failed to file a response to the Motion and the Martinez Report within the time allotted.

While this district's local rules provide that failure to file and serve a response to a motion within the time prescribed constitutes consent to grant the motion, D.N.M.LR-Civ. 7.1(b), the Tenth Circuit does not permit a grant of summary judgment solely on the ground that the motion is uncontested. Reed v. Bennett, 312 F.3d 1190 (10th Cir. 2002). Nevertheless, by failing to file a response, Plaintiff waived the right to respond or to controvert the facts asserted in the summary

---

[1] Within fourteen (14) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

judgment motion. Id., at 1194. The Court therefore examines Defendants' submissions to determine whether they meet their initial burden of demonstrating lack of a genuine issue of material fact.

## Factual and Procedural Background

Plaintiff Kevin Omar Frazer ("Frazer") filed a *pro se* Complaint [Doc. 1] under 42 U.S.C. § 1983, in which he alleges violations of his constitutional rights occurring in April and June 2009 at the Otero County Processing Center ("OCPC") where he was being held as an alien detainee.

Frazer is a citizen of Jamaica being held at OCPC as a detainee, not a prisoner, pending deportation to his home country. [Doc. 1, at 1; Doc. 17, Affidavit of Karl Frawner, at 2].[2] Frazer's religious preference is Rastafarian.

Frazer alleges that on April 8, 2009, he was taken from his dorm at OCPC and illegally strip searched in an atmosphere where officers humiliated and tortured him. He says it was cold in the room and that he was ordered to strip to his underwear in front of female officers, who told him to spread his legs and put his hands on the wall. He claims the strip search violated his human rights and religious rights "as a Rasta man," and he asserts that prison officials "allowed an illegal strip search to go unpunished." [Doc. 1, at 2-3, 8-9].

Frazer next alleges that on June 24, 2009, he was subjected to racial epithets by Sgt. (now Lt.) Troveno, identified elsewhere in the record as Trevino ("Trevino"). Frazer states that he was returning from the dining hall on that date when Trevino told another officer to search Frazer. The officer then slammed Frazer to the wall and struck him with his forearm in the back of the neck.

---

[2] This affidavit will hereinafter be referred to as "Frawner Aff." Karl Frawner ("Frawner") is the Assistant Warden at OCPC and is a named Defendant herein. He is employed by Management & Training Corporation ("MTC"), the company that operates OCPC. [Doc. 17, at 1]. MTC was named as a Defendant by Frazer but was dismissed from this suit by order dated December 31, 2009. [Doc. 9]

When Frazer protested this treatment and said he was going to file a grievance, he says that Trevino responded, "Blacks have no rights in his jail" and "If you nigga think making a grievance and get my officer in any problem I am going to take you to the SHU." Frazer identifies the SHU as a segregation unit used for discipline and sometimes intimidation and torture. Frazer adds, "I fear for my life because I am a homosexual and officers do not like Blacks and homosexual[s]." [Id., at 3, 9]. Frazer alleges further that on June 26, 2009, on his way out of the dining hall, Trevino said to him, "So you think niggas got rights now boy." [Id., at 4, 10].

Frazer states in general terms that his "religious meals are being violated," and jail authorities "allowed my religious rights to be violated." [Id., at 8]. He claims that he is being discriminated against because of his race and his homosexuality, and that Warden Terry, Assistant Warden Frawner, Captain Boyd, and ICE (Immigration and Customs Enforcement) allow these violations to go unpunished.

Frazer says he filed grievances with respect to the alleged incidents of June 24 and June 26, but he received no response to the grievances. [Id., at 9, 10]. At other points in his complaint, he states that he did not exhaust administrative remedies with respect to his claims. [Id., at 5, 11]. He asks for damages in the amount of $114,000,000 to compensate for violation of his constitutional rights. [Id., at 6, 11].

On October 15, 2009, Frazer wrote a letter to the undersigned Magistrate Judge. The letter was filed and docketed as a "Letter re conditions of facility." [Doc. 7]. In this letter, Frazer alleges that unnamed persons opened his legal mail without his consent. He also states that a Sgt. Gamboa interfered with his religious meal, and when he complained about this, Gamboa responded, "keep talking and I bet you won't eat another religious meal while I work here." Thereafter, Frazer says, he was removed from the religious meal program, with no reason given. [Doc. 7, at 1].

3

He makes further general allegations in the letter that "[t]here is a lot of negligence and carelessness, oppression from the part of the staff of this facility that need to be addressed and talked about . . . . [W]e are always threatened to go to the solitary confinement and actually put there for no reason sometimes." [Id., at 2].

The October 15, 2009 letter was not docketed as an Amended Complaint or a Motion to Amend; rather, it was included in the record of the case and designated as a letter. Frazer did not protest this designation. The letter does not comply with the requirements for filing an Amended Complaint. However, because the Court construes liberally *pro se* pleadings filed by inmates, the allegations related to the opening of legal mail and the removal of Frazer from the religious meal program will be addressed below.

On December 31, 2009, the Court entered an Order [Doc. 9], dismissing with prejudice Frazer's claims against Defendants Otero County, because he failed to allege a county custom or policy responsible for the alleged violations. The Court also dismissed with prejudice Frazer's claims against MTC, as vicarious liability is not a proper cause of action under Section 1983. The Court ordered that service be effected on individual Defendants Terry, Frawner, Trevino and Ginez.

Defendants were served and filed their Answer [Doc. 13] on March 5, 2010. As noted above, the court-ordered Martinez Report was filed on June 4, 2010 and Frazer has not filed a response; indeed, the Court has had no filings from Frazer since October 15, 2009. While it is possible that Frazer is no longer incarcerated at OCPC, the Court notes that no mail from the Court to Frazer has been returned. In the absence of notice from Frazer of a change of address, the Court presumes that he has received notice of the proceedings in this case. Attorneys, and parties appearing *pro se,* have a continuing duty to notify the Clerk in writing of any change in their mailing address. D.N.M.LR-Civ. 83.6.

4

For the reasons given below, the Court finds that Defendants have met their burden and recommends that the Motion for Summary Judgment be granted.

## Discussion

Frazer presents five incidents of alleged violations of his constitutional rights: (1) he was strip searched on April 8, 2009 in front of female officers; (2) he was subjected to racial epithets on at least two occasions in June 2009 by Defendant Trevino; (3) Trevino threatened to place him in segregation in retaliation for his complaints; (4) Defendant Ginez did not allow him to eat his religious meal at breakfast on June 25, 2009 and he was removed from the religious meal program at OCPC for no reason; and (5) unnamed persons opened his legal mail without his consent.

As noted above, Frazer concedes that although he filed grievances with respect to some of these complaints, he did not follow through on them and his claims remain unexhausted. In the Martinez Report, Defendants acknowledge that the exhaustion requirement of the Prison Litigation Reform Act ("PLRA") is not applicable to Frazer, since he is being held as an alien detainee. *See*, Cohen v. Clemens, 321 F. App'x 739, 743 (10th Cir. 2009) ("the provisions of the PLRA do not apply to Cohen, because he is an alien detainee in immigration custody, and not a 'prisoner' under the statute").

However, Frazer had procedures available to him at OCPC for lodging complaints and filing grievances. [Frawner Aff., at 2-3]. Defendants contend that Frazer's failure to take advantage of the grievance procedure with respect to his allegations of a strip search, his religious practices, his sexual orientation, and other allegations, are evidence that there is no factual basis for those claims.

Claim 1: Strip Search

Prisoners have a limited constitutional right to bodily privacy, including the right to be free from unreasonable strip searches. *See*, Bell v. Wolfish, 441 U.S. 520, 558 (1979).

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Harris v. Rocchio, No. 97-1020, 1997 WL 787185, at *2-3 (10th Cir. Dec. 24, 1997), *quoting* Bell v. Wolfish, at 559.

Frazer alleges in his Complaint that he was taken from his dorm on April 8, 2009 and was strip searched. He says he was held in an overly air-conditioned room that was so cold the officers wore jackets. He was ordered to strip down to his underwear "and femal[e] officer's telling us to spread o[u]r legs and put o[u]r hands on the wall" while male officers stood by and laughed. "All my rights as a detainee and a Rasta man are violated," Frazer says. [Doc. 1, at 2, 3]. At a later point in his Complaint, Frazer says that he was "stripped naked by male and female officers," was "tortured and humiliated," and that Warden Terry and Assistant Warden Frawner "let the violation go unpunished and no action was ever taken." [Id., at 9].

Frawner states in his affidavit that Frazer was aware of OCPC's grievance policy and the policy on the less formal "Requests to Staff Members." Frazer filed several grievances and several Requests, but none of these complaints mentions the alleged strip search. [Frawner Aff., at 2-3, and Exs. 1(C),(E) thereto]. Defendants contend that the lack of a grievance or other informal complaint bolsters Frawner's statement that the strip search described in Frazer's Complaint never occurred.

Frawner states that he has served as Assistant Warden at OCPC during the entire time of Frazer's incarceration there. He says that the alleged April 8, 2009 strip search never occurred and, indeed, there have been no strip searches at all at OCPC during Frawner's term as Assistant Warden. [Frawner Aff., at 1-3].

6

MTC policy requires that, prior to a strip search, a determination must be made of reasonable suspicion that a particular detainee is concealing contraband or weapons; the warden of the facility must approve the strip search; and only same gender corrections officers may the search. Following a strip search, a report must be filed which details the basis for the reasonable suspicion warranting the search, and sets forth the results of the search. This policy was reviewed by Immigration and Customs Enforcement ("ICE") before it was adopted at OCPC. [Frawner Aff., at 3-4, and Ex. 2(A) thereto]. Frawner states in his Affidavit that MTC personnel strictly adhere to this policy and that no strip search was ever done on Frazer, or any other inmate at OCPC, during the time he has been Assistant Warden. [Id., at 3-4].

Frazer states this strip search occurred; Frawner says, under oath, that it did not. While a factual dispute of this sort would normally preclude summary judgment, the Court notes that there is nothing at all on the record to support Frazer's allegation. He never made a complaint about this alleged incident, even while submitting other grievances and Requests around this time. By failing to file a response to explain this lack of evidence, Frazer waived the right to controvert the facts asserted by Defendant. Reed v. Bennett, *supra*, at 1194. Defendants' Undisputed Material Facts include the statements that no strip searches have been conducted at OCPC, and that OCPC and MTC adhere to strict polices and procedures regarding justification for, and reporting on, any strip searches that may be conducted. [Doc. 18, at 2]. These statements stand uncontroverted.

The Court finds no genuine issue of material fact as to Frazer's allegation that he was strip searched by or in front of female officers, nor that he was humiliated and tortured by OCPC personnel in the course of a strip search.

Claim 2: Discrimination on Grounds of Race and Sexual Orientation

Frazer says that he fears for his life, because the officers at OCPC generally do not like

7

Blacks and homosexuals. [Doc. 1, at 3, 9].

### A. *Sexual Orientation*

Frazer does not cite any particular incident where he was subjected to slurs or mistreatment because of his homosexuality; rather, he states only "officers don't like Blacks and homosexual[s]," and "they are here discriminating against me as a homosexual." [Doc. 1, at 3, 4, 7-9].

To the extent Frazer claims discrimination based on his sexual orientation, there is nothing on the record to indicate that he ever submitted a grievance or an informal complaint about mistreatment based on his sexual orientation. Frawner states in his Affidavit that there is no documentation that Frazer was ever subjected to discrimination due to his sexual orientation [Frawner Aff., at 9], and he supplies MTC policies, applicable at OCPC, which prohibit such discrimination. [Frazer Aff., Ex. 5A].

### B. *Race*

Prisoners are protected against invidious racial discrimination by the Equal Protection Clause, Turner v. Safley, 482 U.S. 78, 84 (1987), and OCPC maintains policies forbidding discrimination against inmates on the basis of race. [Frawner Aff., Ex. 5A].

Frazer alleges that on June 24, 2009, Trevino told him that "Blacks have no rights in this jail" and called him a "nigga." He says that Trevino again used the work "nigga" when speaking to him on June 26, 2009. However, there is no documentation in this case that Frazer ever filed a grievance about the racial remarks allegedly made by Trevino, and there is nothing on the record to support the allegation that Trevino discriminated against Frazer on the basis of his race.

Frazer did file a grievance on another occasion, in August 2009, when a different officer used a racial slur against him. The grievance was investigated and the facts showed that Frazer refused to follow procedures during a "count" of inmates and insisted on taking a shower during the

count, and the alleged racial remark was made by the officer who removed him from the shower. In the process of the investigation, Frazer admitted to refusing an officer's orders and interfering with the count. Because of this misconduct, Frazer lost commissary privileges from August 14-24, 2009. As to his complaint that the officer used racial epithets, the grievance response stated that the officer in question was no longer employed with MTC. [Frazer Aff., Ex. 5B].

The August 2009 grievance indicates that Frazer knew how to use the grievance system and in fact did use it to complain of racial remarks by OCPC staff. But there is no documentation that he filed a grievance, or made an informal complaint of any sort, with respect to the remarks allegedly made by Trevino on two occasions in June 2009. The record indicates that OCPC staff took Frazer's August 2009 allegation of racial discrimination seriously, and that they investigated the complaint and reported that the offending officer was no longer employed at the facility.

By failing to file a response to explain the lack of evidence supporting his allegation against Trevino, Frazer waived the right to controvert the facts asserted by Defendant. Reed v. Bennett, *supra*, at 1194. Defendants' Undisputed Material Facts regarding race and sexual orientation [Doc. 18, at 4-5] remain uncontroverted. The Court finds no genuine issue of material fact as to Frazer's allegations that he was discriminated against because of his sexual orientation, nor that he was subjected to racial slurs or discrimination by Defendant Trevino.

Claim 3: Threats to Place Frazer in Segregation

Prison officials may not retaliate against an inmate, for example by placing him in segregation, because of the inmate's exercise of his constitutional rights. Peterson v. Shanks, 149 F3.d 1140, 1144 (10th Cir. 1998); Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990).

Frazer claims that, on June 24, 2009, when he complained about the actions of another OCPC officer, Trevino threatened to lock him up in a segregation unit used for discipline,

intimidation and torture. Frazer further alleges generally that "[t]here is a lot of negligence and carelessness, oppression from the part of the staff of this facility . . . . [W]e are always threatened to go to the solitary confinement and actually put there for no reason sometimes." [Doc. 7].

There is no specific allegation from Frazer that he was actually placed in segregation. He says that Trevino threatened him once with SHU. He says further that "we" are put into solitary confinement "for no reason sometimes." The latter allegation does not state a claim against any particular official at OCPC; indeed, it does not even allege that Frazer was one of the persons put into solitary confinement. With respect to Trevino's alleged threat, there is no documentation that Frazer ever complained about such a threat or filed a grievance about it.

In the Martinez Report, Defendants state that Frazer was in fact placed in administrative segregation in December 2009. The incident which led to this placement is documented in the Martinez Report [Frazer Aff., Ex. 3(D)], and described as follows: Frazer prepared a written statement, dated December 10, 2009, saying he was going on a hunger strike to protest his detention at OCPC. An incident report arising from Frazer's call for a hunger strike notes that when Frazer was questioned about it, he said that he was speaking for his whole pod and said they would all be going on a food strike. A search of his bunk, following disclosure of Frazer's written statement about a food strike, revealed unauthorized medical tape, wire and rope. [Id., at Bates No. 194].

Frazer was charged with inciting others to riot, interfering with a staff member in the performance of his duties, conduct disruptive of security and the orderly running of the facility, and participating in an unauthorized meeting or gathering. [Id.]. Prior to being placed in the Special Housing Unit, Frazer was placed in pre-hearing detention. He received an administrative fair hearing in accord with OCPC policies [Frazer Aff., at 4-5] and, following the hearing, the charges were sustained. Frazer was given 20 days in segregation, with commissary restrictions, from

December 11-30, 2009. [Frazer Aff., Ex. 3(D), at Bates No. 201].

Frawner states in his Affidavit that "[i]t is clear from these documents that the decision to place Mr. Frazer in Special Housing was in no way related to his race, religion, sexual orientation or his grievance practices"; rather, the disciplinary segregation arose from "the severity of his misconduct." [Frazer Aff., at 5]. The record supports this statement, and it is uncontroverted by Frazer. As Defendants point out in their Martinez Report, Frazer had been placed in administrative segregation less than two months earlier, for fighting. As noted above, he was disciplined with loss of commissary privileges in August 2009 for refusing to participate in an inmate count. This history of disciplinary proceedings indicates that Frazer consistently resisted authority and that his conduct was escalating.

The Court accepts Defendants' Undisputed Material Facts 7, 8 and 9, which state that Frazer was placed in Special Housing due to severe misconduct after receiving an administrative hearing at which he was permitted to submit evidence; that his health condition was checked prior to his being placed in Special Housing, and his conditions of confinement were periodically checked while he was in Special Housing; and that his placement in Special Housing was not related to his race, religion, sexual orientation or grievance practices. [Doc. 18, at 3]. These allegations stand uncontroverted, and they are supported by the evidence submitted by Defendants. [Frazer Aff., at 4-5; and Exs. 3(A)-(D) thereto].

The Court finds no genuine issue of material fact as to Frazer's allegation that Defendant Trevino threatened him with segregation in retaliation for his complaints, nor the he was placed in segregation for no reason.

### Claim 4: Religious Discrimination

Prisoners retain their constitutional rights while incarcerated, including the right to freedom

11

of religion. Cruz v. Beto, 405 U.S. 319, 322-23 (1972); LaFevers v. Saffle, 936 F.2d 1117, 1118-19 (10th Cir. 1991). However, a prison regulation which burdens an inmate's constitutional rights is valid if the regulation is reasonably related to legitimate penological interests. Turner v. Safley, *supra*, 482 U.S. at 89.

Frazer is a Rastafarian. He alleges generally in his complaint that, "My religious meals are being violated by Otero County and MTC. My religious beliefs are being violated." [Doc. 1, at 8].

More specifically, Frazer alleges that his religious rights as a Rasta man were violated when he was strip searched in the presence of female officers. As discussed above, there is no genuine issue of material fact regarding the strip search, and this claim is subject to summary judgment.

Frazer makes other allegations which appear to touch on religious discrimination at OCPC. He alleges that on June 26, 2009, he went to the dining hall for his religious meal at breakfast time. He says that when he got his meal and sat down at the table with his pod, an officer approached and told him to go sit with a different pod, a group of inmates who had already finished eating. When he protested, Defendant Ginez told him to shut up and leave the dining hall. [Doc. 1, at 4, 10]. Although this allegation is not entirely clear, it appears that Frazer alleges that Ginez's actions violated his constitutional rights by depriving him of his religious meal.

Frazer further alleges that on October 5, 2009, an officer told him to "eat fast and get out of his Chow-hall, you all Fucking blacks think you're so special." When he protested, the officer threatened him, saying "keep talking and I bet you won't eat another religious meal while I work here." Two days later, he says, he was taken off the religious meal program, with no reason given. [Doc. 7, at 1]. On October 15, 2009, Frazer submitted a Request to Staff Member, complaining that he had been taken off the religious meal program. He stated further that he made an oral complaint about having been taken off the program and was told that "giving something to someone was what

got me off the program." In response to his Request, he was told that he could re-apply for the program. [Ex. 4B to Frawner Aff.].

In their Martinez Report, Defendants states that inmates with religious dietary restrictions are offered the "Common Fare" diet. This diet is approved by ICE, Immigration and Naturalization Service ("INS") and the Federal Bureau of Prisons as accommodating a wide variety of religious dietary restrictions. Frawner states in his Affidavit that MTC and OCPC comply with these federal standards, and that the facility's food service operation was audited in March-May 2009 by an outside consulting firm which gave the facility high marks for its food service program. [Frawner Aff., at 5-6, and Ex. 4A thereto].

Frawner states further that Frazer requested and received the Common Fare diet. [Frawner Aff., at 6]. The Martinez Report includes several written complaints and grievances filed by Frazer regarding his meals at OCPC. [Ex. 4B to Frazer Aff.]. His complaints that he wasn't given a Vegan meal, or that the food was cold or not well-cooked, do not rise to the level of religious discrimination. On March 5, 2009, Frazer complained in a Request to ICE Staff Member that the food served is not "religious" and that there are "non religious workers" handling the meals. The response to this Request stated, "Food has been checked every day and is within Federal standards." [Id.]. There is no indication that Frazer appealed the ruling or took this complaint any further. As previously noted, audits conducted in March-May 2009 confirm that OCPC was in compliance with federal standards for religious meals. [Ex. 4A to Frawner Aff.].

OCPC is subject to federal standards requiring facilities to allow inmates to practice the religion of their choice consistent with the secure and orderly operation of the facility. [Frawner Aff., at 7, and Ex. 4E thereto]. In addition, MTC has its own internal policies providing for religious programs at its facilities. [Id., at 8, and Ex. 4D thereto]. Audits conducted in April and May 2009

13

demonstrate that OCPC was in compliance with ICE standards related to the religious rights of its detainees. [Ex. 4D]. Frawner states that Frazer did not file any grievances related to deprivation of his religious rights. This is correct, other than the complaints noted above regarding food service at OCPC. Frazer did make two requests for religious books, which requests were approved. [Frawner Aff., at 8, and Ex. 4E thereto].

The Court finds no genuine issue of material fact as to whether Frazer's rights as a Rastafarian were interfered with or impeded by OCPC officials. Although he complains about the quality of the food, he does not dispute that he was provided with Common Fare meals, which meet federal standards for religious dietary standards. His requests for religious books were approved. To the extent Frazer was taken off the religious meal program for a period of time, there is no indication as to how long he was off the program, and his complaint on this issue was met with the response that he was welcome to re-apply.

The Court accepts Defendants' Undisputed Material Facts [Doc. 18, at 3-4] to the effect that Frazer's religious rights were not violated. These facts stand uncontroverted. The Court finds no genuine issue of material fact as to Frazer's allegations that he was denied religious rights at OCPC.

Claim 5: Interference with Mail

A prisoner has certain constitutional rights involving the sending and receipt of legal mail, although these rights are subject to legitimate security concerns, particularly with respect to incoming mail. Thornburgh v. Abbott, 490 U.S. 401 (1989). Isolated incidents where legal mail is mistakenly opened, without any evidence of improper motive or resulting interference with an inmate's right to counsel or access to the courts, does not give rise to a constitutional violation. Smith v. Maschner, *supra*, at 944.

Frazer alleges is that his legal mail was opened by OCPC mail personnel when he was not

present. [Doc. 7, at 1]. He does not give dates when this occurred and does not state who allegedly opened his mail.

The Martinez Report includes a July 6, 2009 Request to Staff Member, in which Frazer complained that his legal mail was opened on four occasions. He does not say that he wasn't present when the mail was opened, nor does he indicate that anything appeared to be missing, nor does he assert that the opening of his legal mail interfered with his right to counsel or right of access to the courts. The response to Frazer's July 6, 2009 Request states that MTC procedures require that legal mail be opened to check for contraband, and that if there is no contraband, all the legal mail remains in the envelope. [Ex. 6C to Frawner Aff.]. Frazer did not pursue this complaint any further. He does not contend that any particular Defendant named in this action was responsible for the alleged mail violations.

OCPC has in place polices on inmate correspondence, which includes rules that inmate mail may be opened to check for contraband, and that inmate legal mail may only be opened in the inmate's presence and inspected only to ensure that no contraband is included with the mail. [Frawner Aff., at 10, and Ex. 6A thereto].

Frawner states in his Affidavit that Frazer's mail rights have not been interfered with by OCPC personnel [Doc. 17, at 8], and this statement stands uncontroverted. In addition, there is no indication or even allegation that the alleged mail incidents interfered with Frazer's access to the courts or to legal counsel. The Court finds no genuine issue of material fact as to the allegations regarding interference with mail.

## Conclusion

The Court finds no genuine issue of material fact as to any of Frazer's claims and recommends that summary judgment be granted in favor of Defendants.

## **Recommended Disposition**

That Defendants' Motion for Summary Judgment [Doc. 18] be granted, and that this action be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge